Lyman **MORGAN** and Robert Dalton, Co-Partners, d/b/a Rite-Type Company, Plaintiffs-Appellants,

v.

INTER–CONTINENTAL TRADING CORPORATION, a Foreign corporation, Defendant-Appellee.

No. 15441.

United States Court of Appeals Seventh Circuit.

May 3, 1966.

Henry C. Fuller, Jr., Lichtsinn, Dede, Anderson & Ryan, Milwaukee, Wis., for appellants.

Suel O. Arnold, Milwaukee, Wis., Arnold, Murray & O'Neill, Milwaukee, Wis., of counsel, for appellee.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

The plaintiffs appeal from an order of the district court granting the defendant's motion for summary judgment and dismissing an action for breach of contract.[1]

The plaintiffs' complaint seeks damages of $100,000 for breach of a contract to grant them an exclusive dealership for the sale of Olympia typewriters in six counties in the Milwaukee area. The complaint alleges that the dealership franchise was to come into effect upon the purchase by the plaintiffs of fifty typewriters from the defendant, the renting of a store from which to sell and service Olympia typewriters, and the hiring of a serviceman to repair and service them. It alleges that the contract was to be similar to the defendant's dealership agreement with the AAA Typewriter Company of Minneapolis and was to continue until the plaintiffs committed justifiable cause for termination. The complaint further alleges compliance with the conditions placed upon the plaintiffs and the refusal by the defendant to grant the exclusive dealership.

In an earlier action between the same parties involving the same subject matter, the plaintiffs sought damages in the same amount on the ground that agents of the defendant fraudulently induced them to enter into the same contract by making the same promise with no inten-

1. The suit was filed in the Circuit Court of Milwaukee County, Wisconsin and removed to the district court on the basis of diversity of citizenship.

tion of performing it. The earlier case proceeded to trial; the facts pertaining to the dispute were fully presented and determined. The court in that case, in a comprehensive opinion, held that the plaintiffs failed to prove a cause of action based upon fraud and deceit.[2] Morgan v. Inter-Continental Trading Corp., 232 F.Supp. 444 (E.D.Wis.1964). The plaintiffs thereafter filed the instant complaint.

The district court granted a motion by the defendant for summary judgment and dismissed the action on the ground that the doctrine of res judicata barred the second suit. The plaintiffs appealed. We agree with the district court that the plaintiffs may not prosecute the instant action, but on a different ground, namely, collateral estoppel.

■■ The plaintiffs correctly point out that one who is fraudulently induced to enter into a contract that subsequently remains unperformed by the wrongdoer has two distinct causes of action, one in tort for fraud and another in contract for breach of the agreement. Bankers Trust Co. v. Pacific Employers Ins. Co., 282 F.2d 106, 111 (9th Cir. 1960); McKee v. Martin, 119 Vt. 177, 122 A.2d 868 (1956); Bischoff v. Hustisford State Bank, 195 Wis. 312, 320, 218 N.W. 353 (1928) (dictum). They also correctly state that a judgment in one cause of action is not res judicata as to a second cause of action, even though presenting the same parties and subject matter. Lindemann v. Rusk, 125 Wis. 210, 237, 104 N.W. 119 (1905). Therefore, strictly speaking, the doctrine of res judicata does not prevent the plaintiffs from commencing a second action for breach of contract after the unsuccessful prosecution of an action for fraudulently inducing entry into the same contract.

■■ However, even as between distinct causes of action, a judgment in a suit brought on one cause of action operates as an estoppel in a second suit between the same parties with respect to issues actually determined in the first action, Lindemann v. Rusk, supra, if the resolution of those issues determined that case. Schofield v. Rideout, 233 Wis. 550, 555, 290 N.W. 155, 133 A.L.R. 834 (1940). The Supreme Court succinctly stated the distinction between res judicata and collateral estoppel in Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 9 L.Ed. 1122 (1955):

> [U]nder the doctrine of *res judicata*, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

■ Here, among the issues actually litigated in the prior fraud action between the parties was the question of whether the defendant promised to grant the plaintiffs an exclusive dealership for Olympia typewriters and the nature and extent of the promise made, if any. In the course of its opinion in that case, the district court stated:

> The most that the evidence establishes is that some type of general promise to grant plaintiffs an "exclusive," was made * * * in the month of September, 1958. But it falls far short of a convincing showing that the promise was to grant an exclusive immediately upon the fulfillment of the three alleged conditions, and it does not establish that the promise included Racine, Kenosha, Washington, Waukesha and Ozaukee Counties. Assuming, however, that the promises were made, they were not the kind of representa-

---

2. The court noted that the plaintiffs were given the opportunity, at the close of all the evidence, to amend their complaint to include a cause of action for breach of contract if they thought the record would support it, but noted that the plaintiffs elected to stand on their action for fraud and deceit. 232 F.Supp. at 446.

tion on which men of ordinary caution and prudence had a right to rely. If the "exclusive" was to be similar to that of the AAA Typewriter Company in Minneapolis or the Stemp Typewriter Company in Madison, and it is so pleaded, then certainly it was incumbent upon plaintiffs to inquire into the exact terms of these contracts. Had they done so, they would have discovered that neither company had an exclusive franchise for portables, but only standards, and the contracts were terminable on five days' notice, and thus have been alerted to the fact that the parties had not reached a "meeting of the minds" concerning the contents of the promised exclusive. If the exclusive contract, as plaintiffs claim, was of such vital concern to them, without which they would never have quit their jobs or expended money opening a store and hiring a serviceman, then certainly its exact terms should have been agreed upon before they plunged headlong into the venture. 232 F.Supp. at 451.

In effect, the district court reached its decision that the plaintiffs were not fraudulently induced into contracting for an exclusive dealership by an initial determination that the promise made was not as contended by the plaintiffs. It was logical, even necessary, to decide whether the defendant made the promise alleged before reaching the question of whether the "promise" was made without any intention of performing it, that is, whether it was fraudulent. As such, the determination that the promise was of a general nature upon which the plaintiffs were not entitled to rely and as to the subject matter of which the parties were not in agreement necessarily determined that case. The resolution of the issue in the fraud action is binding upon the plaintiffs and, since it precludes the existence of the agreement alleged in the present complaint, it estops them from maintaining this suit for breach of contract.

The judgment of the district court is affirmed.