UTILITIES CONSTRUCTION
CORPORATION

v.

PEERLESS INSURANCE COMPANY
and Phoenix Assurance Company

v.

Max D. BLISS, James A. McMennamin,
and M. F. Lawlor, D/B/A Bliss and
Lawlor Insurance Agency

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA and St.
Paul Fire and Marine Insurance Company.

Civ. A. No. 3464.

United States District Court
D. Vermont.
July 1, 1964.

A. Luke Crispe, Brattleboro, Vt., for Utilities Construction Corp.

Richard E. Davis, Barre, Vt., for Peerless Ins. Co.

Kinney & Cook, Rutland, Vt., for Phoenix Ins. Co.

Barber & Barber, Brattleboro, Vt., for third-party defendants Max D. Bliss, James A. McMennamin, and M. F. Lawlor d/b/a Bliss & Lawlor Ins. Co.

Robert Grussing, III, Brattleboro, Vt., for fourth-party defendants American Casualty Co. and St. Paul Fire and Marine Ins. Co.

Ryan, Smith & Carbine, Rutland, Vt., for intervenor Central Vermont Public Service Corp.

GIBSON, District Judge.

### STATEMENT OF THE CASE

This action was commenced by the plaintiff Utilities Construction Corporation, a corporation incorporated under Vermont law and hereafter called Utilities, filing a complaint on May 2, 1962 against Peerless Insurance Company which is a New Hampshire insurance company and the Phoenix Assurance Company which is a New York corporation. The two insurance companies shall hereafter be called Peerless and Phoenix respectively.

In its complaint Utilities states that it had contracted with Central Vermont Public Service Corporation, hereafter called Central Vermont, whereby Utilities undertook to do certain work in the summer of 1955 on the street lamps and sidewalks of Rutland, Vermont. Central Vermont required that Utilities acquire insurance to cover any liability of both Central Vermont and Utilities for this construction. It is alleged Utilities, by its president, did as required and was issued Peerless insurance policy #CGL 47409 which policy expired on July 30, 1955. Peerless submitted to Central

Vermont a certification of the issuance of such insurance to Utilities. The complaint then alleges Utilities purchased a policy from Phoenix which was for the same type coverage. This policy was Phoenix policy #CL 14733 and the policy was in effect from May 11, 1959 until May 11, 1960. It was renewed by Phoenix policy #CL 14750 for which the effective period was May 11, 1960 to May 11, 1961.

Both of the above insurance policies were issued through a partnership of Max D. Bliss, James A. McMennamin and M. F. Lawlor who do business as the Bliss & Lawlor Insurance Agency which shall hereafter be called Bliss & Lawlor. This agency is alleged in the complaint to be general agent for both Peerless and Phoenix.

The complaint alleges that suit had been brought in Rutland County Court on January 5, 1962 by Sarah L. Fleming against Utilities which suit complained of injuries suffered by Mrs. Fleming on August 1, 1960 due to the faulty construction of a sidewalk. Utilities alleges in its complaint that it forwarded the writ in such suit to Bliss & Lawlor who advised that it forwarded the writ to both insurance companies. Utilities then alleges that it received a copy of a Motion for Judgment by Default dated February 19, 1962 which it forwarded to Bliss & Lawlor who advised Utilities that this was also forwarded to both insurance companies. The complaint then alleges that on March 17, 1962 Bliss & Lawlor notified Utilities that both Peerless and Phoenix denied coverage and therefore they were not obligated to defend in the suit brought by Sarah L. Fleming in Rutland County Court.

Utilities finally alleges that it managed to get the default judgment in the amount of $9540.33 set aside when it paid into court, through counsel it retained itself, the amount of $300.00 for the benefit of Mrs. Fleming. Utilities therefore says it has been damaged and will continue to be damaged by what it has already paid in defending the action in Rutland County Court, by what it may be required to pay in the further defense of said Fleming suit and possible judgment against it, and for attorney's fees in that suit and for the prosecution of the present suit.

After filing answers in the action before this Court, Peerless and Phoenix also filed third-party complaints on July 13 and 15, 1963 respectively in which complaints Max D. Bliss, James A. McMennamin, and M. F. Lawlor, and Bliss & Lawlor are named as third-party defendants. These third-party complaints allege in substance that the agency was not authorized to issue the coverage, if it did so issue the coverage claimed by Utilities, and that Bliss & Lawlor should be held liable to Peerless or Phoenix for any damages which Peerless or Phoenix may have to pay to Utilities by virtue of Bliss & Lawlor's errors, omissions, or negligence.

On July 16, 1963 Central Vermont filed a motion to intervene which this Court granted.

On August 7, 1963 Bliss & Lawlor filed their answer to the third-party complaint and simultaneously filed a fourth-party complaint against American Casualty Company and St. Paul Fire and Marine Insurance Company (hereafter called American and St. Paul respectively) whereby Bliss & Lawlor alleged that St. Paul insured Bliss & Lawlor from November 25, 1957 until November 25, 1960 against certain insurance agents' and brokers' errors and omissions; that American similarly insured Bliss & Lawlor from November 25, 1960 until November 25, 1963; that each of these insurance companies claims its policy provides only excess coverage over that afforded by the other and will disclaim any obligation to Bliss & Lawlor to defend them or to pay any sums recoverable against them. The fourth-party complaint then asks that the rights of Bliss & Lawlor with respect to these insurance policies be determined and that the fourth-party defendants American and St. Paul or each of them pay any damages incurred by Bliss & Lawlor.

American and St. Paul filed answers to the fourth-party complaint in the latter part of August 1963. American states that it issued policy No. EO–A–3415 to Bliss & Lawlor covering the period November 25, 1960 to November 25, 1963. It then states that any error, omission, or negligence of Bliss & Lawlor did not occur within the period of the policy except by way of excess insurance over that afforded by the policy of insurance issued by St. Paul. American then states in its answer that it has disclaimed any obligation to Bliss & Lawlor, to defend or pay any sums recoverable, except as excess insurance. St. Paul states in its answer that it issued policy No. 569AA2571 to Bliss & Lawlor and that the policy period was November 25, 1957 to November 25, 1960. It disclaims coverage on the grounds that its policy does not provide any coverage and says that its policy does not provide any coverage by reason of the existence of other insurance and also by the breach of Bliss & Lawlor in not immediately giving notice to St. Paul of the existence of the suit.

A hearing was held by this Court on October 25, 1962 and a trial on the merits was heard by the Court without a jury on March 6, 1964.

### FINDINGS OF FACT

After hearing and upon consideration of the requests for findings as submitted by all the parties to this action, I find the following facts:

1. Pursuant to a contract between Utilities and Central Vermont, Utilities performed certain work on the street lamps and sidewalks of Rutland, Vermont. Utilities commenced such work on May 9, 1955 and completed it on June 17, 1955. Following completion of its construction work, Utilities relinquished the same to the City of Rutland on or about July 30, 1955.

2. A claim for personal injuries arising from faulty construction of a sidewalk by Utilities was made against Utilities by Sarah L. Fleming. This was done by suit filed in the Rutland County Court on January 5, 1962. In this complaint Sarah L. Fleming alleged her accident occurred on August 1, 1960 and that Utilities was negligent in the construction of a certain sidewalk and that as a result of the defective work done and performed by Utilities for Central Vermont on or about June 3, 1955 she sustained personal injuries. Subsequent to the commencement of the law action in Rutland County Court, Central Vermont was joined therein as a party defendant.

3. After service of the writ in Sarah L. Fleming v. Utilities and Central Vermont, the president of Utilities, Mr. Hosmer, immediately sent said writ to Bliss & Lawlor. Bliss & Lawlor by their employee, Mr. McMennamin, immediately notified Peerless by forwarding the same to Peerless on January 9, 1962. After receiving a copy of the Rutland County Court writ from Bliss & Lawlor, Peerless forwarded said writ on January 10, 1962 to the General Adjustment Bureau for its attention on behalf of Phoenix. The matter was handled by Mr. LaVault of the General Adjustment Bureau. Bliss & Lawlor as agents for Peerless and Phoenix thus received notice of the claim of Sarah L. Fleming on or about January 9, 1962. Bliss & Lawlor also forwarded to Phoenix directly on January 11, 1962 a letter of demand by attorneys for Central Vermont. No actual notice was given of Sarah L. Fleming's claim to Phoenix until the receipt of this letter or the writ. Neither Peerless nor Phoenix thereafter took any further action as to the suit of Sarah L. Fleming against Utilities and Central Vermont. They gave no notice prior to March 17, 1962 to Utilities or Central Vermont that no defense would be made on their behalf. No reservation-of-rights letter or non-waiver agreement was requested from Utilities or Central Vermont by either Peerless or Phoenix.

On February 26, 1962 Utilities received a copy of Motion for Judgment for Sarah L. Fleming which was immediately forwarded by Utilities on that date to Bliss & Lawlor who advised Utilities that

copies were being sent to Peerless and Phoenix. President Hosmer of Utilities also called Bliss & Lawlor and was assured that Utilities had complete coverage and would be taken care of; that the suit would be defended by the Utilities insurance carrier. Utilities at all times thus relied on Bliss & Lawlor, Peerless and Phoenix to defend the action brought by Sarah L. Fleming and to pay any judgment she might legally obtain against Utilities or Central Vermont.

On March 9, 1962 Phoenix mailed a memorandum to Bliss & Lawlor informing them that Utilities did not have coverage under the Phoenix policy for completed operations. Mr. McMennamin was also informed by Peerless that the Peerless policy in effect during the time Utilities did the construction work did not apply to "products hazards" which Peerless defined in small print in the policy to mean an accident to a contractor's operation after completion thereof.

On March 17, 1962 Bliss & Lawlor notified Utilities that both Peerless and Phoenix claimed no coverage under policies issued by them to Utilities through Bliss Lawlor. Since no appearance had been entered for Utilities, a Default Judgment was obtained against it by Sarah L. Fleming. After retaining its own counsel, Utilities on March 17, 1962 determined that such judgment had been granted against it in the sum of Nine Thousand Five Hundred Dollars ($9500) plus interest and costs of Forty Dollars and Thirty-three Cents ($40.33). Utilities on March 20, 1962 filed a motion to set aside the Fleming judgment, thus making every effort it could then make to protect itself. This motion was heard in Rutland County Court on June 9, 1962 and the Judges of that court granted the motion upon the condition that Utilities pay to the Clerk of that court for the benefit of Sarah L. Fleming Three Hundred Dollars ($300.00). Utilities complied with this condition and the default judgment was set aside. In obtaining this vacation of judgment, defending itself in that action to date, and prosecu-

tion of the instant action, Utilities has incurred the following legal expenses:

| | |
|---|---:|
| Attorney's fee | $1,000.00 |
| Payment of judgment | 300.00 |
| Mileage expense | 142.00 |
| Miscellaneous costs | 68.00 |
| Total | $1,510.00 |

Further, Utilities may incur additional damage if it is required to continue to defend the Fleming action and is found liable to Sarah L. Fleming.

4. Bliss & Lawlor were general agents for Peerless between December 19, 1945 and January 1963; they were the general agent for Phoenix from May 20, 1958 through October 25, 1962. With respect to the issuance and delivery of policies of insurance on behalf of Peerless and Phoenix, Bliss & Lawlor acted for these companies in each instance, and in this connection took orders for the policy, countersigned and delivered the policy, and was supplied by each company, and in particular Peerless, with a form for the issuance of certificates of coverage to third persons when requested. James A. McMennamin of Bellows Falls, Vermont has been connected with Bliss & Lawlor for sixteen years and handled the application of Utilities for contractors' liability and also supervised the issuance of policies through Bliss & Lawlor from Peerless and Phoenix to Utilities. At all times material it was, and is, Mr. McMennamin's understanding that all policies issued through Bliss & Lawlor were issued in accordance with their customer's requests and desires, with the coverage as desired by the customer. It was Mr. McMennamin's intention to have policies so issued.

5. Beginning in 1950, Mr. Hosmer, the president of Utilities, appraised Bliss & Lawlor of the fact that while working under a contract to a public utility that it was necessary for Utilities to accept a contract with a clause that it would indemnify and save harmless such utility company. Mr. Hosmer requested as com-

plete coverage as possible for all work that Utilities did and all liability in connection with the work.

6. As soon as Mr. Hosmer made his request for complete coverage to Bliss & Lawlor through Mr. McMennamin, Mr. McMennamin contacted Peerless and ordered a policy exactly as Mr. Hosmer had requested. Mr. McMennamin received a policy from Peerless which he understood contained complete coverage for Utilities, all as requested by Mr. Hosmer, and delivered this policy of Peerless to Mr. Hosmer. Thereafter, each year Bliss & Lawlor renewed this policy—at first in Peerless, later in St. Paul, and then in Phoenix—always understanding and always believing that the policy contained as complete coverage as possible for its customer Utilities.

7. Both Bliss & Lawlor and Utilities did not know that the policies issued by Peerless and Phoenix attempted to exclude coverage for so-called Products Hazard and completed operations. Mr. McMennamin testified, and it was not denied, that had he as a representative of Peerless and Phoenix known or been informed that completed operations were intended by Peerless and Phoenix to be excluded from the "comprehensive liability insurance" which he ordered, that Mr. McMennamin would promptly have bound the insurance company, that is, he would have obtained such excluded coverage for Utilities from Peerless and subsequently from Phoenix. Mr. Hosmer, the president of Utilities, at all times pertinent to this case believed that Utilities was completely covered by the insurance policies as issued by Peerless and Phoenix. Furthermore, the certifications of insurance furnished under these policies of insurance contained no limitation whatsoever as to coverage other than as to amount.

8. Peerless issued a policy of comprehensive general liability insurance to Utilities through its agent Bliss & Lawlor which was policy #CGL 47409 on July 30, 1954 and this policy was in effect until July 30, 1955. It thus was in force at the time that Utilities performed the construction work on the sidewalks for Central Vermont. The same type of coverage afforded by said policy had previously been issued to Utilities by Peerless through Bliss & Lawlor each year since August 1950, the first year that Mr. Hosmer requested complete coverage for Utilities. Utilities continued to carry its insurance with Peerless through August 1, 1958.

9. The same type of coverage which had been carried by Utilities through Bliss & Lawlor since 1950 in Peerless was later carried by St. Paul and then finally with Phoenix. In all of these instances, Bliss and Lawlor believed they had requested complete coverage as far as possible from the insurance companies and believed that the policies as furnished Bliss & Lawlor by St. Paul and later by Phoenix did contain complete coverage.

10. A Phoenix policy which Bliss & Lawlor and Utilities supposed to be a complete coverage policy was issued by Phoenix to Utilities on May 11, 1960 good for one year. The alleged accident to Sarah L. Fleming was claimed to have happened on August 1, 1960 and suit was commenced in Rutland County Court as a result of this alleged accident on January 5, 1962.

11. Upon close examination of the policies issued by Peerless and Phoenix, certain coverages are excluded from them. Under both of them liability for "aggregate products" is "NOT COVERED". There is also an endorsement on each policy that the policy does not apply "to the products hazard as defined" in the policy. Under CONDITIONS in the format of the policy issued by Phoenix the term "products hazard" means:

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading

under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification started in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be "operations" within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

The declarations schedule in division (d) states that there is no coverage for "Products (Including Completed Operations)". Finally, the policies also state that insurance is afforded "only with respect to such and so many of the following coverages as are indicated by the specific premium charge or charges."

Summary of Facts

This case reduced to its barest essentials reveals the following:

(a) In 1955 Utilities ordered through Bliss & Lawlor, an insurance agency upon whom it had relied for years, complete coverage for any liability it might incur while carrying out its Central Vermont contract.

(b) Bliss & Lawlor ordered a complete contractor's liability coverage insurance policy from Peerless in 1955, when the Central Vermont contract was to be done, and thereafter, each year Bliss & Lawlor ordered, at the request of Utilities, a complete coverage policy from whatever company was to furnish the policy. In 1960 Bliss & Lawlor ordered such a policy from Phoenix for Utilities.

(c) Both Utilities and Bliss & Lawlor assumed the policies furnished initially by Peerless, and in 1960 by Phoenix, contained complete coverage, though in fact the policies furnished by these respective companies did not contain the complete coverage ordered.

(d) The work done by Utilities under the Central Vermont contract was done in 1955 and while the Peerless policy was in force.

(e) The Fleming accident, which is the basis of the lawsuit filed in Rutland County Court by Mrs. Fleming against Utilities and Central Vermont, happened in 1960, while the Phoenix policy was in force.

## CONCLUSIONS OF LAW

When a contractor applies for comprehensive liability insurance from its regular insurance agent, and when the agent requests such a policy from an insurance company and receives and turns over to the contractor what the agent believes is what was ordered, the insurance company is estopped from taking advantage of a policy exclusion as to a con-

tractual risk which they failed to provide for in the policy. The issue appears to have been clearly decided in favor of the insured in the case of Hully v. Aluminum Company of America, 143 F.Supp. 508 (S.D.Iowa, 1956) where the court held that under these circumstances the insurer is estopped to deny the excluded risk upon which the insured in good faith reasonably has relied as being covered within the terms of the policy which he has specifically requested.

I therefore find as a matter of law that the insurance policies which were issued by Peerless and Phoenix through Bliss & Lawlor to Utilities provided coverage for completed operations done by Utilities.

Although the reasoning in the dissent of Judge Clark in the case of Export S. S. Corporation v. American Insurance Company, 106 F.2d 9 (2d Cir., 1939) is extremely persuasive, it has been held by most courts that an insurer who provides coverage at the time that the injuries are actually sustained is the insurer to be held liable rather than the insurer who provided coverage at the time the actual work was done. Nielson v. Travelers Indemnity Company, 174 F.Supp. 648 (N.D. Iowa, 1959); 29 Am.Jur. Insurance § 323; Remmer v. Glens Falls Indemnity Co., (1956) 140 Cal.App.2d 84, 295 P.2d 19, 57 A.L.R.2d 1379.

Since the insurance agency Bliss & Lawlor actually ordered a policy which was in fact different from the policy it thought it had received from Phoenix in behalf of Utilities, it would appear that Phoenix was negligent in its issuing the policy it did issue, and thus, Phoenix has no rightful claim against Bliss & Lawlor. 42 C.J.S. Indemnity § 21.

### JUDGMENT ORDER

Therefore, after consideration, it is hereby ordered that Phoenix be and hereby is required to defend Utilities and Central Vermont in the action in Rutland County Court against Sarah L. Fleming. IT IS FURTHER ORDERED that up to the limits of its policy Phoenix shall pay

any damages which Sarah L. Fleming may recover from these parties in that action as well as the costs of the defense in such action which have been and shall be incurred. IT IS FURTHER ORDERED that Phoenix shall reimburse Utilities and Central Vermont for all expenses which Utilities and Central Vermont have incurred in the prosecution of this action for declaratory judgment.