Russell L. DWYER, et al., Plaintiffs,

v.

CITY OF MIDDLETOWN, et
al., Defendants.

No. C–1–88–0529.

United States District Court,
S.D. Ohio, W.D.

Aug. 4, 1989.

Irving I. Saul, Dayton, Ohio, for plaintiffs.

Timothy R. Evans, Hamilton, Ohio, Brian E. Hurley, L. Clifford Craig, Cincinnati, Ohio, for defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court after a hearing on defendants' motions for summary judgment (docs. 4, 11, 12). Plaintiffs have responded to the motions (docs. 8, 15).

### I

Plaintiffs Russell L. Dwyer and Patricia Dwyer brought this civil rights action in June, 1988 as a result of the following sequence of events. In early 1987, defendant Williams Burns, then the City Manager of defendant City of Middletown, Ohio, began investigating allegations of sexual misconduct made against Russell Dwyer, then the Chief of Police of Middletown, Ohio. Mr. Dwyer was formally charged with sexual misconduct, and suspended from his position, on June 15, 1987. On June 18, 1987, Mr. Dwyer filed a complaint in the Butler County Court of Common Pleas, Case No. CV87–06–0703, naming Mr. Burns and the City of Middletown as defendants. He sought a temporary restraining order, a preliminary injunction and a permanent injunction preventing Mr. Burns, the City of Middletown, and their agents and employees from "holding a predisciplinary hearing without apprising him [Mr. Dwyer] of the specific evidence against him and without appointing an impartial arbiter." Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction, p. 4, attached as Exhibit B to Defendant City of Middletown's Motion for Summary Judgment, doc. 4.

On July 2, 1987, before a predisciplinary hearing was held, Mr. Dwyer and the City of Middletown executed a Settlement Agreement. The contract provided, in relevant part, that Mr. Dwyer would resign from his position as Chief of Police effective October 31, 1987; that the City would withdraw all charges previously filed against Mr. Dwyer; that the City would pay Mr. Dwyer $10,000 for expenses incurred in the matter; that Mr. Dwyer would release and discharge the City from all claims, past, present, or future, which could ever be asserted as a result of the existing controversy between the parties; that the City would release no information concerning the subject controversy except in response to a court order; that the City would agree to Ms. Dwyer's continued employment with the Division of Police; and that Mr. Dwyer would withdraw his lawsuit against the City which was pending in the Butler County Court of Common Pleas. The Settlement Agreement was signed by Mr. Dwyer and by Mr. Burns on behalf of the City of Middletown. Agreement, attached as Exhibit 1–A to Plaintiffs' Memorandum Contra Defendants' Motion for Summary Judgment Under Rule 56(c), doc. 8. The suit for injunctive relief was dismissed at this time and a letter of future resignation was tendered.

On October 2, 1987, Mr. Dwyer filed a Complaint in Mandamus in the Butler County Court of Common Pleas, Case No. CV87–10–1246. In the complaint, Mr. Dwyer alleged that respondents, City of Middletown, Williams Burns, and Gary Shupe, breached the settlement agreement and refused to recognize his lawful rescission of his future resignation. Mr. Dwyer therefore sought a Writ of Mandamus directing respondents to restore him to his position as Chief of Police. Complaint in Mandamus Containing Prayer for Alternative Writ, attached as Exhibit 1 to Plaintiffs' Memorandum Contra Defendants' Motion for Summary Judgment Under Rule 56(c), doc. 8. The Court of Common Pleas dismissed Mr. Dwyer's complaint for a Writ of Mandamus. The Court of Appeals affirmed the denial of Mr. Dwyer's petition on grounds that 1) Mr.

Dwyer had the power to withdraw his resignation as police chief, but had no legal right to reinstatement unless defendants breached the settlement agreement wherein he gave up his right to that position; 2) the provision of the settlement agreement concerning the release of information about the controversy was illegal, and therefore unenforceable even if breached; 3) the provision protecting Ms. Dwyer's employment status was illegal, and therefore unenforceable even if breached; 4) except for these two provisions, the settlement agreement is valid and enforceable; 5) Mr. Dwyer surrendered his right to be the Chief of Police in the valid and enforceable settlement agreement; 6) Mr. Dwyer therefore has no clear and legal right to be reinstated as Chief of Police; and 7) Mr. Dwyer is not entitled to a Writ of Mandamus. Memorandum Decision and Judgment Entry, *State, ex rel. Russell L. Dwyer v. City of Middletown*, Case No. CA87–10–139, 1988 WL 76809 (Ohio Ct. App. July 25, 1988), attached as Exhibit E to Defendant City of Middletown's Motion for Summary Judgment, doc. 4. The Ohio Supreme Court subsequently denied motions for an order directing the Court of Appeals for Butler County to certify its record. Entry, *State of Ohio, ex rel. Russell L. Dwyer v. City of Middletown*, 39 Ohio St.3d 730, 534 N.E.2d 357 (1988), attached as Exhibit A to Motion for Summary Judgment of Defendants Burns, Owens, Shupe, Van Arsdale, Becker, Marsh, Schmidt, Bruck, Stone, Kaup, Schaefer, and Moore, doc. 12.

Plaintiffs Russell and Patricia Dwyer brought the instant action under 42 U.S.C. § 1983 on June 13, 1988. Paragraphs III(A)(1) through III(A)(9) of their complaint relate to events which occurred before the parties entered into the settlement agreement of July 2, 1987; paragraphs III(A)(10) through III(A)(12) and III(A)(14) relate to the two provisions of the agreement which the Butler County Court of Appeals held illegal and unenforceable and to alleged post-settlement investigations and harassment of Mr. Dwyer by individual defendants; paragraph III(A)(13) refers to Mr. Dwyer's demand for a "name-clearing"

hearing; and paragraphs III(B)(15) through III(B)(21) relate to Ms. Dwyer's employment status. Complaint, doc. 1.

The defendants are the City of Middletown, a municipal corporation, Williams Burns, the former City Manager of Middletown, Ohio, Gary Shupe, the former Chairman of the Middletown City Commission, Donnie Owens, a Lieutenant in the Middletown Police Department, Darrell Salyers, a former Lieutenant in the Middletown Police Department, Ronald Van Arsdale, a Deputy Chief of the Middletown Police Department, Sergeants Becker, Marsh, Schmidt and Brock, officers in the Middletown Police Department, Paul Lewis, an officer in the Middletown Police Department, Guy Stone, Gary Kaup and Patricia Schaefer, Middletown City Commissioners, and James Moore, a patrolman in the Middletown Police Department. They contend that Mr. Dwyer's claims are barred by the doctrines of *res judicata*, collateral estoppel, and compromise and settlement. They also argue that Mrs. Dwyer has failed to state a claim upon which relief can be granted. The defendant City further maintains that plaintiffs have failed to state a claim against it under section 1983 or Ohio law.

## II

The general doctrine of *res judicata* is often analyzed to include two preclusion concepts: "issue preclusion" and "claim preclusion." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Issue preclusion, which is also referred to as collateral estoppel, bars relitigation of issues actually litigated in a prior action which were necessary to the outcome of that prior action in a second case brought upon a different cause of action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Claim preclusion, or *res judicata* in its narrow sense, forecloses litigation of matters that should have been raised in an earlier suit. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n. 1, 105 S.Ct. 1327, 1329

n. 1, 84 L.Ed.2d 274 (1985); *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1.

■ Issues that were actually litigated in a state court proceeding are given the same preclusive effect in a subsequent federal suit brought under 42 U.S.C. § 1983 as they would be given in the courts of the state where the first decision was rendered. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Likewise, a state court judgment has the same *claim* preclusive effect in a federal section 1983 case that the decision would have in the courts of the state where the judgment was rendered. *Migra,* 465 U.S. at 85, 104 S.Ct. at 898.[1] Therefore, the first issue to be decided is what effect would be given under Ohio preclusion law to the Court of Appeals' decision affirming the denial of Mr. Dwyer's petition for a writ of mandamus.

Although Ohio courts have not been uniform in their enunciation of the specific prerequisites for applying collateral estoppel, they generally require that a party plead and prove the following elements:

1) mutuality of parties;
2) the issue was actually tried and decided and necessary to the final judgment in prior suit; and
3) the issue is identical to the issue involved in the prior suit.

*See Gilbraith v. Hixson,* 32 Ohio St.3d 127, 512 N.E.2d 956 (1987); *Goodson v. McDonough Power Equipment, Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978 (1983); *Johnson's Island v. Board of Township Trustees,* 69 Ohio St.2d 241, 431 N.E.2d 672 (1982).

■ The mutuality of parties rule requires that the party seeking to use a prior judgment and the party against whom a prior judgment is being asserted were parties to the original judgment or in privity with those parties. *Goodson,* 2 Ohio St.3d 193, 443 N.E.2d 978, syllabus ¶ 1. Although the traditional mutuality rule has been abandoned as to issue preclusion by federal courts and by a majority of state courts, 18 Wright, Miller & Cooper, Federal Practice and Procedure, § 4464 (1981), Ohio still requires mutuality of parties as a general proposition. *Goodson,* 2 Ohio St.3d 193, 443 N.E.2d 978, syllabus ¶ 1. However, Ohio courts are willing to relax the rule where justice would reasonably require it. *See Gilbraith,* 32 Ohio St.3d at 131, 512 N.E.2d at 961; *Hicks v. De La Cruz,* 52 Ohio St.2d 71, 75, 369 N.E.2d 776, 778 (1977) *(per curiam ).* For example, in *Hicks v. De La Cruz,* the Ohio Supreme Court prevented relitigation of the ownership and control of defendant hospital for purposes of applying sovereign immunity where defendants had unsuccessfully argued those exact issues in a prior suit. *Hicks,* 52 Ohio St.2d 71, 369 N.E.2d 776. The *Hicks* court's central consideration was that the collateral estoppel doctrine was invoked against a party who had been afforded a full and fair opportunity to contest the specific issues in the prior proceedings. *See also Gilbraith,* 32 Ohio St.3d at 131, 512 N.E.2d at 961; *Goodson,* 2 Ohio St.3d at 200–201, 443 N.E.2d at 200–201.

■ As explained above, the instant case is brought against the three respondents in Mr. Dwyer's [2] prior mandamus ac-

---

1. The *McCurry* and *Migra* holdings are premised on the statute which implements the Constitution's Full Faith and Credit Clause, 28 *U.S.C.* § 1738. That statute reads in pertinent part: Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

2. Ms. Dwyer, a plaintiff in the instant case, was not party to the prior mandamus action. Nor was she a party to the settlement agreement, the validity of which was determined in the mandamus action. Her interest in the agreement was that of a third-party beneficiary. *See Norfolk & Western Co. v. United States,* 641 F.2d 1201, 1208 (6th Cir.1980) (applying Ohio law). While a third-party beneficiary may maintain an action to enforce a contract, *id.,* he or she has no special right to enforce an invalid provision of a contract. The contract provision involving Ms. Dwyer has been declared invalid and unenforceable. Thus, she may be estopped from now bringing an action based on that provision of the settlement agreement between her husband and the City.

tion plus twelve additional defendants. Obviously, the parties which were common to both actions satisfy the mutuality requirement. The twelve additional defendants, three of whom were City Commissioners for the defendant City of Middletown and nine of whom were police officers employed by the City, may satisfy the mutuality requirement by being privies with one of the parties to the prior action. In *Whitehead v. General Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969), syllabus 4, the Ohio Supreme Court held that, for purposes of collateral estoppel, "a person is in privity with another if he succeeds to an estate or an interest formerly held by another." Because the additional twelve individual defendants are charged with distinct acts which contributed to the alleged deprivation of plaintiffs' rights, plaintiffs' claims against them do not arise by way of succession from an estate or interest of the three common defendants. Accordingly, the twelve additional defendants are not in privity with parties to the prior action. *Id.*[3]

■ Mutuality may be established under *Hicks* and its progeny, however, if collateral estoppel is invoked against a party who was afforded a full and fair opportunity to contest the specific issue in the prior proceeding. *Hicks*, 52 Ohio St.2d at 74, 369 N.E.2d at 778. In Mr. Dwyer's previous mandamus action, he sought reinstatement as the Middletown Police Chief. However, the settlement agreement between Mr. Dwyer and the City of Middletown provided that Mr. Dwyer would resign from that position and would discharge the City from any claims which could ever be asserted as a result of their controversy. The Court of Appeals upheld the validity and enforceability of the settlement contract, except for the two provisions mentioned earlier, and concluded that Mr. Dwyer was not entitled to reinstatement as police chief.

To prevail, he would have had to prove either that the settlement agreement was invalid or that the City of Middletown had breached the agreement. These issues were fully and fairly at issue in the mandamus decision. Therefore, collateral estoppel may be asserted against Mr. Dwyer despite the failure of strict mutuality of parties.

In order to collaterally estop Mr. Dwyer from relitigating these issues in the instant suit, defendants must also prove that the issues were actually tried and decided and necessary to the final judgment in the mandamus action. *See Trautwein v. Sorgenfrei*, 58 Ohio St.2d 493, 391 N.E.2d 326 (1979). The present case involves claims that Mr. and Ms. Dwyer were deprived of their constitutional rights under color of state law by defendants' violation of the settlement agreement of July 2, 1987. The issues that were actually tried and decided by the Butler County Court of Appeals in the mandamus action are outlined at pp. 265–66, *supra*. A review of those issues discloses that each was necessary to the Court's order denying the petition for writ of mandamus.

As the first two conditions for application of the doctrine of collateral estoppel have been satisfied, the doctrine will bar relitigation of any issues which Mr. Dwyer raises in this section 1983 suit which are identical to those litigated in the prior mandamus action. The complaint in the instant case alleges a conspiracy by defendants to deprive plaintiffs of their civil rights by terminating Mr. Dwyer's employment as Middletown Police Chief. The previous mandamus action determined the validity of the settlement agreement and held groundless Mr. Dwyer's allegations that the agreement had been breached. Thus, to the extent that the plaintiffs' section

---

**3.** Although in Ohio a judgment for an employer sued for his or her employee's negligence bars a subsequent action against the employee, *see Fightmaster v. Tauber*, 43 Ohio App. 266, 183 N.E. 116 (1932), syllabus 3, no Ohio court has held that the mere existence of an employer-employee relationship suffices to establish privity for collateral estoppel purposes. In any event, it is impossible to determine on the state of this record whether the defendant city commissioners are employees of the City of Middletown. *See e.g.* Ohio Ethics Commission Advisory Opinion No. 75–024 (Aug. 19, 1975) (finding that a member of a municipal corporation's civil service commission who receives less than $1,000 per year for serving is not a public official or employee under Ohio Rev.Code Ann. § 102.01 (1988)).

1983 suit is premised on breach or invalidity of the settlement agreement, such claims must be dismissed. Further, pursuant to the terms of the valid settlement agreement, Mr. Dwyer has released the City of Middletown from past, present, and future claims resulting from the controversy existing between the parties. Agreement, ¶ 4, attached as Exhibit 1–A to Plaintiffs' Memorandum Contra Defendants' Motion for Summary Judgment under Rule 56(c), doc. 8. Therefore, no claims concerning the bases for Mr. Dwyer's suspension by the City may be raised in the instant suit.

Defendants insist that all of plaintiffs' claims in this section 1983 action are barred. They contend that those issues not barred under the doctrine of collateral estoppel are prohibited under the claim preclusion doctrine of *res judicata.*

Under *res judicata,* where the subject matter and causes of action are identical, a former judgment is conclusive between the parties and their privies, not only as to matters actually determined, but also as to any other matters which could have been determined in the prior action. *Stromberg v. Board of Educ.,* 64 Ohio St.2d 98, 413 N.E.2d 1184 (1980) (*per curiam*); *Charles A. Burton, Inc. v. Durkee,* 162 Ohio St. 433, 123 N.E.2d 432 (1954), syllabus ¶ 2. To bar relitigation, "there must be an identity of the causes of action—that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chemical Co., Inc. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981).

Plaintiffs strenuously argue that the instant section 1983 action arises from conduct and issues which they were precluded from claiming in the prior mandamus action, and that therefore the element of identity is missing. Specifically, they contend that the narrow scope of mandamus actions prevented them from litigating the following questions:

1. Whether Dwyer, indeed, was guilty of any improprieties at all, and defendants' action were only to "set up" the chief,

2. Whether there were bases for suspending Dwyer,

3. Whether the City had any intention of honoring provisions of the so-called "settlement" agreement,

4. What parts the other persons involved, now defendants in the instant action, played in this series of unhappy events,

5. Whether Pat Dwyer's life was deliberately endangered so as to force her resignation,

6. Whether the alleged actions by the defendants violated Russell and Pat Dwyer's civil rights.

Plaintiffs' Memorandum Contra Defendants' Motion for Summary Judgment Under Rule 56(c), doc. 8, p. 15.

Defendants assert that these issues could have been raised in the mandamus action.

Ohio law provides that "[m]andamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station." Ohio Rev.Code Ann. § 2731.01 (Anderson 1981). Mandamus lies to compel reinstatement of wrongfully discharged civil servants. *See State, ex rel. Williams v. Gribben,* 127 Ohio St. 398, 188 N.E. 654 (1933). However, mandamus will only issue if the relator demonstrates (1) a clear legal right to the relief prayed for; (2) that the respondent is under a clear legal duty to perform the act requested; and (3) that the relator has no adequate remedy at law. *State, ex rel. Westchester Estates, Inc. v. Bacon,* 61 Ohio St.2d 42, 399 N.E.2d 81 (1980), syllabus ¶ 1. Ohio Rev.Code Ann. § 2731.11 (Anderson 1981) permits the recovery of damages in a mandamus action "as in a civil action." Section 2731.11 further provides that "[s]uch recovery of damages against a defendant is a bar to any other action upon such cause of action." *See, e.g., Sansone v. The City of North College Hill,* No. C–1–82–1548, slip. op. at 10 (S.D.Ohio Aug. 15, 1983) (Spiegel, J.).

■ In the prior mandamus action, Mr. Dwyer sought issuance of the writ on grounds that the City breached its settlement agreement with him. The Butler County Court of Appeals overruled the City's challenge to the mandamus proceeding, holding that "a writ of mandamus is an appropriate remedy to obtain reinstatement where an appointing authority breaches the terms of an agreement it makes with a civil service employee which causes that employee to submit his resignation." *State, ex rel. Dwyer v. City of Middletown,* No. CA87-10-139, slip op. at 9. The Court of Appeals specifically found that for the narrow breach of contract issue, Mr. Dwyer had no adequate remedy at law. *Id.* at 8-9. Implicit in the opinion is that Mr. Dwyer possessed an adequate remedy at law for other, less narrowly drawn claims. Thus, Mr. Dwyer's contention that he was prevented from offering certain arguments in the mandamus action is well-taken. Accordingly, there can be no identity of causes of action, and *res judicata* will not apply to bar the present suit.

Unfortunately for Mr. Dwyer, however, many of those same claims are precluded by the valid settlement agreement which he executed with the City and by the doctrine of collateral estoppel. Thus, the first three questions submitted by plaintiffs as issues they could not raise in the mandamus action (*see* p. 269, *supra*) may not be raised in this section 1983 case. Question 4, concerning newly named individual defendants, states a claim that may be pursued in the instant action.[4] However, by virtue of the valid settlement agreement, the issue may not be used as a vehicle to assert liability against the City. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56

L.Ed.2d 611 (1978) (holding, *inter alia,* that "a municipality cannot be held liable under section 1983 on a *respondeat superior* theory). The remaining questions are not precluded under collateral estoppel, except to the extent that they involve a challenge to the validity of the settlement.

Ms. Dwyer's claim is discussed in the following section. The civil rights question (issue number 6) is simply a broad restatement of the individual claims considered herein; it does not warrant individual attention.

### III

Plaintiff Patricia Dwyer alleges that, as a result of her husband's suspension, she was placed in a job in which her life was endangered and thereby forced to resign. Complaint, doc. 1, p. 11, ¶¶ 19-20. She contends that defendants' actions constitute a violation of due process, thereby establishing a cause of action under 42 U.S.C. § 1983.[5]

Defendants assert that Ms. Dwyer has failed to state a claim upon which relief can be granted. They argue that, under Chapter 124, Ohio Rev.Code Ann. (Anderson 1984), Ms. Dwyer is obligated to seek an administrative remedy for any wrong, with appeal to the Ohio Court of Common Pleas. Further, the City of Middletown alleges that plaintiffs characterized any wrongdoing by the individual defendants as "unauthorized" or "malicious," and therefore defendants' acts could not reflect any City policy.

Neither side has offered any authority for their position. In fact, neither side has discussed whether the elements of a section 1983 action are satisfied, whether what

---

4. A civil rights action may be brought under section 1983 against local government officials sued in their official capacities. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Although the individual defendants do not concede that plaintiffs' action is properly brought under section 1983, they did not find it necessary "to set forth the reasons why plaintiffs' complaint fails to state a claim under 42 U.S.C. § 1983." Motion for Summary Judgment of Defendants Burns, Owens, Shupe, Van Ars-

dale, Becker, Marsh, Schmidt, Bruck, Stone, Kaup, Schaefer, and Moore, doc. 12, p. 5, n. 6. Accordingly, the Court will not address this issue in this Order. The Court will consider the question when it is properly brought before it.

5. As was previously discussed, Ms. Dwyer is collaterally stopped from bringing an action based on the provision of the settlement agreement which purported to protect her employment status. *See* n. 2, *supra.*

appears to be a constructive discharge claim falls under Chapter 124, or whether the administrative remedies of Chapter 124 apply in section 1983 actions. The Court declines to rule on the validity of Ms. Dwyer's cause of action without the benefit of briefing on these and other issues. Accordingly, plaintiffs shall file a detailed statement of Ms. Dwyer's "constructive discharge" claim within ten days after the date of this Order, explaining how such "discharge" satisfies the elements of a section 1983 action. Within seven days after the date on which plaintiffs' statement is filed, each defendant shall file, if warranted, a supplemental motion to dismiss or motion for summary judgment. Plaintiffs shall file a response within seven days thereafter. The sole question to be addressed is the validity of Ms. Dwyer's "constructive discharge" claim under 42 U.S.C. § 1983: whether she was "discharged" and whether such "discharge" violated her federal rights. No other issue concerning Ms. Dwyer is extant. No additional memoranda, beyond those mentioned above, shall be filed.

### IV

Having found that plaintiffs are collaterally estopped from raising the validity of the settlement agreement in the instant action, and therefore that Mr. Dwyer's release of the City of Middletown from all claims arising from his resignation bars his section 1983 action against the City, it hereby is Ordered that the City is granted summary judgment on those claims. Mr. Dwyer's claims against the individual defendants are not similarly barred except to the extent that they are based on a challenge to the validity of the settlement agreement. All other claims remain pending. Thus, their motions for summary judgment on Mr. Dwyer's claims are denied. However, the Court will entertain a motion from the individual defendants concerning whether the plaintiffs' claims against them are properly brought under section 1983. Any such motion shall be filed within twenty days after the date of this Order, and shall address the allegations in plaintiffs' complaint with particu-

larity. *See* n. 4, *supra.* Plaintiffs shall respond within ten days after the filing of the motion, and defendants may have seven days thereafter within which to reply. Finally, the parties are Ordered to further brief their positions on Ms. Dwyer's "constructive discharge" claim in accordance with the schedule established in section III of this Order.

SO ORDERED.